SENTRY INSURANCE COMPANY *v.* WILLIAM McDONALD, GARLAND IMPLEMENT COMPANY, AND TRI-STATE INSURANCE COMPANY

5-5606                      471 S.W. 2d 546

Opinion delivered October 18, 1971

*Tackett, Young, Patton & Harrelson,* for appellants.

*Raffaelli, Hawkins & Carter* and *Wright, Lindsey & Jennings,* for appellees.

CARLETON HARRIS, Chief Justice. This is a workmen's compensation case and the sole question is which of two insurance companies is responsible for the payment of compensation benefits to an injured employee. William McDonald, an employee of Garland Implement Company, on November 27, 1968, sustained an accidental injury to the L5-S1 region of the spine. He underwent surgery in which a lumbar laminectomy was performed by Dr. Thomas Fletcher of Little Rock. McDonald was awarded a 15% permanent partial disability to the body as a whole, and this has been completely paid by appellant, Sentry Insurance Company. In September, 1969, McDonald returned to light duties at Garland Implement Company, and though still regularly visiting his doctor, worked continuously until March 5, 1970, at which time McDonald either sustained a new injury, aggravated an old injury, or simply became unable to work because of a degenerative process resulting from the November 1968 injury. In the meantime, on October 1, 1969, appellant, Sentry Insurance Company, had cancelled its workmen's compensation coverage with the Garland Implement Company, and this coverage had been taken over by Tri-State Insurance Company, one of the appellees herein. On April 15, 1970, Dr. Fletcher again performed an operation, this time for a large disc herniation at the L 4-5 level. At a hearing before the referee, it was held that it had not been established by a preponderance of the evidence that a new injury, or aggravation of a pre-existing condition, had occurred and the original carrier of the compensation insurance, Sentry Insurance Company, was held liable for payment. This opinion was appealed to the full commission, which affirmed the referee's decision, and on appeal to the circuit court, the commission's decision was af-

firmed by that tribunal. From the judgment of the circuit court, this appeal is prosecuted. For reversal, it is simply asserted that there is no substantial evidence to support the commission's findings.

There is, of course, no necessity to review all of the evidence, since we are only concerned with whether there was substantial evidence to support the award. The record does disclose such evidence, which we proceed to set out.

The evidence of McDonald himself indicates that his physical difficulties continued after the first operation, and his condition was far from satisfactory for some time prior to the second reported injury. He testified that on going back to work in September of 1969 he was still having trouble with his legs, and had a "pretty bad limp". When asked if he was still going to a doctor at that time, McDonald replied "Yes, sir, I ain't never quit", and he said that he had finally cut the visits down to about once a month, but commenced going back about every two weeks just prior to commencing therapy (January, 1970). When questioned about the increased visits, McDonald said, "I wasn't getting along quite as well as he thought I ought to and I didn't think I was either". He stated that he had bad leg trouble, "there was an awful limp in it and it hurt my hip and back down into my leg and into my foot". The witness said that he had "started getting worse", and also had "awful nerve trouble". In addition, he suffered neck pain and his back kept "getting worse"; his knee "buckled" causing him on one occasion to fall and receive an abrasion on his head. During the period when he was taking therapy, he went every day, five days per week; he was also taking drugs. The incident of March 5, relied upon by appellant, occurred when McDonald started to pick up a case of oil out of the back of a truck, and he said he felt a hard pain. The witness, in comparing this incident with the original injury in November 1968, stated "Both of them were sharp pains but it seems like the first one felt like a pain . . . it felt like something just tore". McDonald said that his doctor increased his medicine and he continued to work.

Dr. Fletcher, by letter of June 17, 1970, made the following pertinent observations.

"It is my opinion that Mr. McDonald sustained injury to both the L 4-5 and the L 5 S 1 discs at the time of the November 28, 1968 injury. * * * I think that a continued disc degeneration has been going on since the original injury and the more recent injury was only a minor precipitating factor. * * * You will note the initial myelogram in February, 1969 was interpreted by the Radiologist, Dr. Brenner as showing probable herniation of the disc at both interspaces even at that time. This view is also confirmed by my operative findings. Both discs were not removed initially because I thought the L 4-5 lesion would be able to heal. This however, was not the case and Mr. McDonald was actually having some back trouble and difficulty to a degree even before the March 5 injury."

Appellant attacks this evidence by calling attention to a letter written by Fletcher on April 21, 1970, in which the doctor stated, referring to the first operation, "At the time of that surgery, however, no significant abnormality of the disc was found". We do not agree that this statement has any particular significance. In the first place, Fletcher stated that McDonald probably received some injury to both disc sites originally, and he stated that the reason both discs were not initially removed was that he thought that the L 4-5 lesion would be able to heal. It simply appears that this conclusion was erroneous. Of course, in addition, any conflicts in the evidence were due to be resolved by the commission.

Additional evidence is furnished by Dr. George Brenner, a radiologist who took X-rays following the original injury, and prior to the first operation. Dr. Brenner's report states: "IMPRESSION: Probable herniation of the nucleus pulposus on the left at both the L 4-5 and L5-S1 interspaces."

As stated, there is no need to discuss appellant's evidence, for even though, on the evidence as a whole, we disagreed with the commission's findings, such find-

ings would still have to be upheld. No citation of authority is necessary to reiterate that the commission is the fact finder in compensation cases, and not this—nor any other—court.

Affirmed.